Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LUIS A. RODRIGUEZ-OCASIO; CRYSTAL BALLY-CHOONOO; and JOYCE R. LINIS,** *on behalf of themselves and those similarly situated*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **MIDLAND CREDIT MANAGEMENT, INC., and JOHN DOES 1 to 10,** <br><br> **Defendants.** | Civil Action No.: 17-3630 (ES) (MAH) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiffs Luis A. Rodriguez-Ocasio, Crystal Bally-Choonoo, and Joyce R. Linis sue Defendant Midland Credit Management, Inc. ("MCM") on behalf of themselves and others similarly situated for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (D.E. No. 8 ("Amended Complaint" or "Am. Compl.")). Currently before the Court are Plaintiffs' objections (D.E. No. 170 ("Plaintiffs' Objections")) to the Report and Recommendation issued by the Honorable Michael A. Hammer, U.S.M.J. (D.E. No. 163 ("Report and Recommendation" or "R&R")) recommending dismissal for lack of subject matter jurisdiction, and Judge Hammer's subsequent denial (D.E. No. 169) of Plaintiffs' motion for reconsideration of the Report and Recommendation (D.E. No. 164). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the Court adopts in full Judge Hammer's

1

recommendation to **DISMISS** Plaintiffs' Amended Complaint *with prejudice* for lack of subject matter jurisdiction.

I.     **BACKGROUND**

       A.     **Factual Background**

As alleged in the Amended Complaint, Plaintiffs "incurred or owed certain financial obligations arising from" certain accounts, "which were primarily for [their] personal, family, or household purposes" (the "Accounts"). (Amended Complaint ¶ 13). Plaintiffs further maintain that the Accounts were assigned to or placed with MCM for collection when they "were past-due and in default." (*Id.* ¶¶ 15–16). MCM sought to collect those debts by mailing collection letters to Plaintiffs (hereinafter ("Collection Letters")). (*Id.* ¶¶ 17, 20 & 23; D.E. No. 8-1 (May 27, 2016 collection letter to Rodriguez-Ocasio); D.E. No. 8-2 (May 27, 2016 collection letter to Linis); D.E. No. 8-3 (August 29, 2016 collection letter to Bally-Choonoo)). Those letters, the Amended Complaint alleges, were the first communications between MCM and Plaintiffs. (Amended Complaint ¶¶ 18, 21 & 24). Plaintiffs allege that the Collection Letters failed to include specific language mandated by § 1692g(a)(5) in an initial written communication between a debt collector and a consumer. More specifically, they allege that the Collection Letters did not include "a statement that, upon the consumer's written request within [thirty days after the receipt of this notice], the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor" (the "Missing Statement"). (*Id.* ¶ 28 (quoting § 1692g(a)(5))). Plaintiffs allege that it is the policy and practice of MCM to send initial written communications without the Missing Statement. (*Id.* ¶¶ 29 & 52). In bringing their claim under the FDCPA, Plaintiffs seek to represent a class consisting of:

> All natural persons with an address within . . . the State of New Jersey, to whom, from May 20, 2016 through the final resolution of

    this case, Defendant sent one or more letter(s) in an attempt to collect a consumer debt, which failed to include the statement required by 15 U.S.C. § 1692g(a) and/or 15 U.S.C. § 1692g(a)(5).

(*Id.* ¶ 32).

### B. Procedural History

Plaintiffs filed suit against Defendant on May 20, 2017. (D.E. No. 1). They filed an Amended Complaint on September 13, 2017. (Amended Complaint). On August 25, 2021, the Court denied Defendant's motion to compel arbitration (D.E. No. 57). (D.E. No. 107). On November 15, 2022, Judge Hammer issued an Order to Show Cause seeking to determine whether Plaintiffs have Article III standing on their FDCPA claims in the wake of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). (D.E. No. 158). On April 13, 2023, Judge Hammer issued a Report and Recommendation which recommended dismissing the matter for lack of subject matter jurisdiction, concluding that Plaintiffs lack standing to pursue their claims under the FDCPA. (R&R). Plaintiffs moved for reconsideration of the Report and Recommendation on April 27, 2023, arguing that the newly-decided Third Circuit case *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568 (3d Cir. Apr. 18, 2023), indicates that they have standing to pursue their claims. (D.E. No. 164). Judge Hammer denied the motion for reconsideration on May 24, 2023. (D.E. No. 169). Plaintiffs filed objections to the Report and Recommendation and the denial of reconsideration on June 7, 2023 (Plaintiffs' Objections), and Defendant filed a brief in opposition (D.E. No. 171 ("Opp.")). On November 1, 2023, Plaintiffs submitted supplemental authority to the Court, highlighting the Third Circuit's recent decision in *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023). (D.E. No. 177). Defendant responded to the supplemental authority brief on November 16, 2023. (D.E. No. 178).

## II.     LEGAL STANDARDS

"Appeals from the orders of magistrate judges are governed by Local Civil Rule 72.1(c)." *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 09-0571, 2013 WL 322595, at *2 (D.N.J. Jan. 22, 2013). The standard of review of a magistrate judge's decision depends on whether the magistrate judge addressed a dispositive or non-dispositive issue. *Id.* When a magistrate judge addresses non-dispositive matters, a magistrate judge has authority to enter an order. Fed. R. Civ. P. 72(a). When a magistrate judge addresses matters that are considered dispositive, a magistrate judge submits a report and recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1(c)(2). When a party objects to a report and recommendation, "the district court must make a *de novo* determination of those portions to which the litigant objects." *Leonard Parness Trucking Corp. v. Omnipoint Commc'ns, Inc.*, No. 13-4148, 2013 WL 6002900, at *2 (D.N.J. Nov. 12, 2013); *see also* 28 U.S.C. § 636(b)(1). And the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If the Court overrules the objections, the Court next has an obligation to "give some reasoned consideration to the magistrate's report before adopting it as the decision of the Court." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017).[1]

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." U.S. Const. art. III, § 2. To establish Article III standing to sue, a

---

[1] It is not clear what the standard is for reviewing Judge Hammer's denial of Plaintiffs' motion for reconsideration, as the motion for reconsideration was an unorthodox motion due to the fact that it sought reconsideration of a recommendation, rather than an order. *See Makwana v. Express Scripts, Inc.*, No. 14-7096, 2015 WL 4078048, at *2 n.1 (D.N.J. July 6, 2015). Out of an abundance of caution, the Court reviews the arguments for reconsideration in tandem with the objections to the Report and Recommendation under de novo review. *See id.* (treating motion for reconsideration of a Report and Recommendation as an objection to the Report and Recommendation).

plaintiff must demonstrate (i) an "injury in fact"; (ii) a "causal connection between the injury and the conduct complained of"; and (iii) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

The first element—injury in fact—is the "'foremost' of standing's three elements." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (citing *Spokeo*, 578 U.S. at 338). To allege an injury in fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d. Cir. 2016) (cleaned up). A harm is particularized if it affects the plaintiff "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. A plaintiff may not allege a "bare" statutory violation, "divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205 (emphasis in original). "If a statutory harm is concrete, no 'additional harm beyond the one Congress has identified' is required." *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625, 626–27 (3d Cir. 2021) (quoting *Spokeo*, 578 U.S. at 342); *see also, e.g.*, *Browne v. Nat'l Collegiate Student Loan Tr.*, No. 21-1871, 2021 WL 6062306, at *3 (D.N.J. Dec. 22, 2021) (dismissing complaint for lack of standing where plaintiff alleged only non-licensure because such bare procedural violation

5

does not establish concrete harm).

"'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo*, 578 U.S. at 340. "Although tangible injuries are perhaps easier to recognize," the Supreme Court has stated that "intangible injuries can nevertheless be concrete," such as, for example, harm resulting from violations of the right to free speech or free exercise. *Id.*; *see also id.* at 342 (noting that the risk of reputational harm associated with libel and slander may be concrete); *Morales*, 859 F. App'x at 626 ("Intangible harms like privacy abuses can be concrete."). Under governing Supreme Court precedent, "courts must engage in a two-part inquiry when assessing statutory injuries: 'first, whether the alleged injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law.'" *Ortner v. Equifax Info. Servs., Inc.*, No. 21-2219, 2022 WL 3566623, at *3 (D.N.J. Aug. 18, 2022) (quoting *Rohl v. Pro. Fin. Co.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022)). A substantive "informational injury" can also be considered a concrete intangible harm. *See Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023). Specifically, "an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing" where the plaintiff alleges "(1) the omission of information to which she claims entitlement, (2) adverse effects that flow from the omission, and (3) the requisite nexus to the concrete interest Congress intended to protect when it created a legal entitlement to the information at issue." *Id.*

### III.  DISCUSSION

#### A.  Prior Decisions

In his Report and Recommendation, Judge Hammer found that the Plaintiffs lack Article III standing to bring their asserted claims under the FDCPA. (R&R at 6–10). More specifically,

Judge Hammer concluded that Plaintiffs did not allege a concrete injury. (*Id.*). To start, Judge Hammer noted that Plaintiffs declined to argue that they suffered a tangible harm, leaving only the possibility of an intangible harm. (*Id.* at 6). Next, Judge Hammer found that Plaintiffs' alleged harm was not concrete. (*Id.* at 6–10). Judge Hammer rejected Plaintiffs' argument that a violation of § 1692g(a) of the FDCPA "gives rise to a concrete harm without demonstrating any additional harm," finding that this argument "conflates injury in law with the concrete injury that *TransUnion* requires." (*Id.* at 6). Judge Hammer also rejected Plaintiffs' argument that Defendants' omission of a material statement caused them harm akin to the "traditionally recognized harm" of "misrepresentation." (*Id.* at 6–9). He noted that "neither the Amended Complaint nor Plaintiffs' briefing specifies what that misrepresentation" was, and emphasized that Plaintiffs failed to plead reliance on the debt collection letters, an element required under the various forms of misrepresentation claims available under New Jersey law. (*Id.* at 7–9). Finally, Judge Hammer rejected Plaintiffs' argument that the FDCPA does not "implicate the Supreme Court's concern over a statute by which 'Congress could authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any federal law.'" (*Id.* at 10). Judge Hammer concluded that "[t]he mere fact that Plaintiffs received and reviewed [the] debt collection letters, without more, cannot confer standing." (*Id.* at 9). Judge Hammer thus recommended dismissing the matter with prejudice for lack of standing. (*Id.* at 10–11).

As noted, after Judge Hammer issued his Report and Recommendation, Plaintiffs moved for reconsideration of the Report and Recommendation, arguing that a newly-decided Third Circuit case, *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568 (3d Cir. Apr. 18, 2023), regarding informational injuries and standing indicated that they did in fact have standing.

7

(Reconsideration Motion).[2] Judge Hammer denied the motion, finding that *Deutsch* did not alter his original analysis. (D.E. No. 169 at 3–4). More specifically, Judge Hammer found that while in *Deutsch*, the Third Circuit found standing in part based on the fact that the plaintiff there suffered adverse effects from the omission of accurate information in a debt collection letter, as the omission "frustrated her ability to intelligently choose her response and deprived her of her right to enjoy the benefits provided by the FDCPA," in the instant matter, the Amended Complaint makes no such allegation. (*Id.*).

### B.     The Parties' Arguments

Plaintiffs objected to the Report and Recommendation and the denial of reconsideration. (Plaintiffs' Objections). Plaintiffs argue that the Amended Complaint adequately demonstrates a concrete injury under governing Supreme Court and Third Circuit precedent, satisfying the two-part test set forth in *TransUnion* for assessing the concreteness of an intangible injury—(i) "whether there is a close relationship between the *type* of the plaintiff's harm from the statutory violation and the *type* of harm protected by a common law analogue exists," and (ii) "Congress' intent in enacting the legislation." (*Id.* at 4–8). More specifically, Plaintiffs first assert, as they did before Judge Hammer, that the harm they suffered via omission of the Missing Statement has a common law analogue in the tort of "misrepresentation by omission when under a duty to inform." (*Id.* at 5). They add that, while Judge Hammer concluded that misrepresentation was a mismatch as Plaintiffs' alleged harm did not satisfy all the elements of misrepresentation,

---

[2]     In *Deutsch*, the Third Circuit found that the plaintiff had Article III standing to bring a putative class action under Section 1692e of the FDCPA for providing misleading information in a debt collection letter. *See* 2023 WL 2987568 at *3. The plaintiff in *Deutsch* received a debt collection letter from the defendant that she claimed was misleading because it omitted accurate information about her rights under the FDCPA. *See* 2023 WL 2987568, at *1. The Third Circuit determined that the plaintiff "adequately alleged that she has suffered a concrete informational injury." 2023 WL 2987568, at *3. Specifically, the Third Circuit found that the plaintiff had satisfied all three elements of informational injury, including that she had "suffered an adverse effect from the omission of accurate information . . . because she had alleged that it 'frustrated [her] ability to intelligently choose [her] response' and 'deprived [her] of [her] right to enjoy [the] benefits' provided by the FDCPA." *Id.* (alterations in original).

*TransUnion* "finds that . . . the first element—*i.e.*, a relationship between the plaintiff's alleged harm and the harm protected by a common law analogue—involves only a comparison of *types of harms*," a process "which does [not] involve comparing the elements of the plaintiff's claim or . . . that of the common law analogue." (*Id.*). Plaintiffs add that reliance on the omission by MCM is irrelevant because "the harm is that Plaintiffs could have availed themselves of the right to request the original creditor's name and address had they been provided the [proper] notice." (*Id.* at 6). Plaintiffs compare this harm to misrepresentation by omission, as "a misrepresentation by omission is an intentional tort which causes harm by depriving the plaintiff of material information which, if disclosed, could have resulted in the plaintiff taking a different course of action." (*Id.*). Second, Plaintiffs argue in regard to Congressional intent that

> in enacting the FDCPA (specifically 15 U.S.C. § 1692g(a)), Congress deemed that five specific pieces of information were material to a consumer at the beginning of the debt collection process. Thus, when MCM failed to include one of these pieces of information, namely the statement of the consumer's right to make a written request for the name and address of the original creditor, they deprived Plaintiffs of material information.

(*Id.* at 5–6).

Defendant responds that "Plaintiffs fail to allege, claim, or even attempt to argue that they have suffered any harm beyond a mere technical statutory violation." (Opp. at 4). Defendant adds that Plaintiffs "do not allege that they undertook or refrained from taking any action resulting from the letters," or that "they relied on the letters to their detriment (or in any way at all)," or that they suffered emotional, physical, or monetary harm from the letters, or "that they ever considered contacting Midland." (*Id.* at 5). Because Plaintiffs have failed to allege that they suffered any "downstream consequences" from the omission at issue, Defendant argues, they lack standing under *TransUnion*. (*Id.* at 6–7). Defendant distinguishes the harm found sufficient to confer

9

standing in *TransUnion* by highlighting that in that case misleading information was actually published to creditors, and thus the Court in *TransUnion* found that harm sufficiently similar to the traditional claim of defamation because "publication is essential to liability in a suit for defamation." (*Id.* at 9). Finally, Defendant argues that the harm allegedly suffered by Plaintiffs is not sufficiently similar to any form of the traditional claim of misrepresentation, which all require reliance, which has not been alleged here. (*Id.* at 10).

### C. Analysis

For the following reasons, the Court agrees with Judge Hammer and Defendant: Plaintiffs have failed to allege a concrete injury, and thus do not have standing to assert their claims.

Congress enacted the FDCPA to address "abundant evidence of the use of abusive [or] deceptive . . . debt collection practices by many debt collectors." *Schultz v. Midland Credit Mgmt., Inc.*, 905 F.3d 159, 161–62 (3d Cir. 2018). Under the FDCPA, consumers have the substantive right to be free from "false, deceptive or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692e.

The Supreme Court has recently reiterated that "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm." *TransUnion*, 141 S. Ct. at 2200. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms . . . ." *Id.* Here, where Plaintiffs do not argue that their injury is tangible, the relevant inquiry is whether Plaintiffs have sufficiently alleged an intangible harm that goes beyond a "bare" statutory violation—in other words, a harm that is concrete. *See Spokeo*, 578 U.S. at 341. "When determining whether an intangible, statutory harm is concrete, courts look to common law

analogies and Congress's judgment." *Morales*, 859 Fed. App'x. at 626; *see also Spokeo*, 578 U.S. at 341 (noting that "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important"). Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341; *see also Morales*, 859 Fed. App'x. at 626 ("[N]ot all transgressions create standing—procedural gaffes that cause no 'concrete' injury fall short of Article III's requirements.").

In addition, "the Supreme Court has repeatedly recognized . . . that an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing." *Deutsch*, 2023 WL 2987568, at *3 (quoting *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022)). "[A] plaintiff has alleged an informational injury sufficient to give rise to standing if she alleges '(1) the omission of information to which [she] claim[s] entitlement, (2) adverse effects that flow from the omission, and (3) the requisite nexus to the concrete interest Congress intended to protect' when it created a legal entitlement to the information at issue." *Id.* (quoting *Kelly*, 47 F.4th at 214).

### i. Informational Injury

The Court will first discuss address whether Plaintiffs have alleged a sufficient "informational injury" to grant them standing. The Court finds that they have not. The Supreme Court was quite clear in *TransUnion* that "[a]n 'asserted informational injury that causes no

adverse effects cannot satisfy Article III.'" *TransUnion*, 141 S. Ct. at 2214 (citation omitted). Nowhere in their Amended Complaint do Plaintiffs allege any adverse effects whatsoever. The closest Plaintiffs get to alleging adverse effects is their argument that "the harm is that Plaintiffs *could* have availed themselves of the right to request the original creditor's name and address had they been provided the [proper] notice." (Plaintiffs' Objections at 6 (emphasis added)). But this is not in the Amended Complaint, and regardless, Plaintiffs do not allege in their Amended Complaint or argue in their briefing that they *would* have availed themselves of the right to request the original creditor's name and address, or that they even would have *considered* doing so or that they were deprived of the ability to do so.

With no adverse effect, there is simply no standing to assert an informational injury. Other courts have come to the same conclusion on similar claims. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 145 (3d Cir. 2023) (noting that "the criteria a plaintiff must meet to establish an informational injury" includes that "'she [must be] denied information to which she [is] legally entitled [by statute], and . . . the denial [must] cause[] some adverse consequences related to the purpose of the statute.'" (citation omitted)); *Rabinowitz v. Alltran Fin. LP*, No. 21-2765, 2022 WL 16362460, at *9 (D.N.J. Oct. 25, 2022) (finding lack of standing where the plaintiff alleged violations of the FDCPA via improper letters because the plaintiff "failed to show that he . . . relied in any way on the alleged misrepresentations in the letters, and subsequently . . . failed to show that he was actually harmed in any way by their receipt"); *Rohl v. Pro. Fin. Co., Inc.*, 21-17507, 2022 WL 1748244, at *4 (D.N.J. May 31, 2022) (finding lack of standing where the plaintiff alleged that the defendant "used misleading representations" in a collection letter in violation of the FDCPA, as the plaintiff did not "allege that she relied on [the defendant's] representation" or allege any "additional harm" due to the collection letter); *Pazymino v. Portfolio Recovery Assocs.,*

*LLC*, No. 19-2259, 2023 WL 7126446, at *3 (D.N.J. Oct. 30, 2023) (finding lack of standing in FDCPA case where the plaintiff did not "allege that she took or failed to take any action as a result of the [misleading] [l]etter or subsequent letters, and thus [did] not allege any 'adverse effects' or 'downstream consequences'"). "The consensus in post-*TransUnion* FDCPA decisions is that misleading information in a debt collection letter causes concrete harm sufficient to confer Article III standing *only where*, at a minimum, that information influences a plaintiff's decision-making with respect to the debt." *Pazymino*, 2023 WL 7126446, at *3 (citation omitted)). And indeed, this Court has rejected a nearly identical claim to Plaintiffs' claims previously for lack of standing. *See Jones v. JHPDE Finance I, LLC*, No. 19-3865, 2023 WL 4287616, at *4–5 (D.N.J. June 30, 2023). Here, Plaintiffs have failed to set forth any facts indicating that the information they claim they were entitled to influenced their decision-making with respect to the debt. As such, the Court finds that they have not alleged a sufficient informational injury to confer standing.

### ii. Similarity to Traditional Common Law Claims

The Court will next address whether Plaintiffs' proffered injury confers them standing via its supposed similarity to the common law claims of negligent or fraudulent misrepresentation. The Court concludes that Plaintiffs' attempt to liken their claims to misrepresentation does not provide them the pathway to standing that they seek. While Plaintiffs assert that not every element needs to be present when performing the comparison to traditional claims endorsed by *TransUnion* (Plaintiffs' Objections at 5), the Court is unconvinced that, without reliance, the *harm* Plaintiffs allege is sufficiently similar to the *harm* of misrepresentation so as to qualify as having a "close relationship," as *TransUnion* requires. *TransUnion*, 141 S. Ct. at 2204. As Judge Hammer noted, under New Jersey law there are multiple forms of misrepresentation, all of which require reliance. *See Masone v. Levine*, 887 A.2d 1191, 1194 (N.J. Super. Ct. App. Div. 2005) (negligent

13

misrepresentation claims require reliance); *Schillaci v. First Fidelity Bank*, 709 A.2d 1375, 1379 (N.J. Super. Ct. App. Div. 1998) (fraudulent misrepresentation claims require reliance). Because reliance is the essence of the injury in a misrepresentation claim, Plaintiffs' comparison to misrepresentation necessarily fails without it. *See Huber*, 84 F.4th at 148–49 (finding that for an FDCPA plaintiff's harm to sufficiently resemble the harm of misrepresentation, a plaintiff must suffer a "cognizable" harm stemming from their reliance on the alleged misrepresentation); *Rabinowitz*, 2022 WL 16362460, at *11 ("[A] critical element of both a negligent or fraudulent misrepresentation claim is reliance of some kind. . . . In other words, under common-law, there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been." (cleaned up and citation omitted)); *Walid v. Yolanda for Irene Couture*, 40 A.3d 85, 90 (N.J. Super. Ct. App. Div. 2012) (noting that "reasonable reliance" is a "critical element" of a fraudulent misrepresentation claim).

It is true that in *TransUnion*, the Supreme Court found that the harm suffered by certain plaintiffs when "TransUnion provided third parties with credit reports . . . label[ing] the class members as potential" terrorists/criminals bore a sufficiently "close relationship" to "the harm associated with the tort of defamation," despite the fact that defamation requires a false statement and it was not technically false that the plaintiffs were "potentially" terrorist/criminals. *TransUnion*, 141 S. Ct. at 2209. However, the Supreme Court premised that finding on the fact that "[t]he *harm* from being labeled a 'potential terrorist' bears a close relationship to the *harm* from being labeled a 'terrorist.'" *Id.* (emphasis added). Here, without any reliance on the missing information, the "harm" alleged by Plaintiffs bears no real resemblance to the harm suffered by misrepresentation victims who relied upon material omissions to their detriment; in the case of misrepresentation, the reliance itself *is* the harm. *See Rabinowitz*, 2022 WL 16362460, at *9

14

(finding harm alleged by FDCPA claimant not comparable to misrepresentation where the plaintiff did not demonstrate reliance on alleged misrepresentations); *Rohl*, 2022 WL 1748244, at *4 (same); *Pazymino*, 2023 WL 7126446, at *3 (same); *see also id.* at *4 ("Plaintiff's lack of detrimental reliance does not defeat standing simply because she failed to plead the elements of a common law fraud or fraudulent misrepresentation claim.  Rather, lack of detrimental reliance defeats standing because, without it, Plaintiff has not been *injured* in a way that is 'traditionally recognized as providing a basis for lawsuits in American courts.'" (quoting *TransUnion*, 141 S. Ct. at 2204)).  Indeed, as noted, Plaintiffs suffered no articulable harm at all.

Plaintiffs' citations to supposedly contrary cases do not alter the Court's conclusion.  While Plaintiffs rely on *Deutsch*, that (non-precedential) decision actually "emphasized that for an asserted informational injury to confer standing, the omission must lead to 'adverse effects' or 'downstream consequences,'" which, as noted, have not been alleged here.  *Pazymino*, 2023 WL 7126446, at *4 (rejecting, under similar facts, the comparison to *Deutsch*, due to lack of adverse effects); *see also Jones*, 2023 WL 4287616, at *4 (rejecting nearly identical standing argument and noting that *Deutsch* "requires a plaintiff to allege that she 'suffered an adverse effect from the omission of accurate information' to establish an informational injury").  Plaintiffs additionally cite to *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023), as "additional authority" supporting their objections.  (D.E. No. 177).  However, *Huber* merely confirmed that "adverse effects" are necessary for informational injury standing, and additionally held that to be sufficiently similar to the harm of misrepresentation, a plaintiff's alleged injury must constitute "some cognizable harm" stemming from *reliance* upon misstatements or omissions.  *Id.* at 145 & 148–49.  As explained, this is exactly what the Amended Complaint lacks.  Finally, Plaintiffs cite to several standing cases which pre-date *TransUnion*.  (Plaintiffs' Objections at 7–8).  Because

15

*TransUnion* heralded a shift in the standing analysis for FDCPA claims, those cases are simply unpersuasive. *See Levins v. Healthcare Revenue Recovery Grp., LLC*, No. 17-0928, 2023 WL 416077, at *3–4 & n.1 (D.N.J. Jan. 26, 2023) (noting that "the landscape changed after *TransUnion*" and that "since *TransUnion*, courts, including this Court, have repeatedly applied the heightened standing requirement outlined in *TransUnion* to FDCPA claims," and therefore rejecting the plaintiffs' attempts to rely on pre-*TransUnion* authority).

In sum, the Court concludes that Plaintiffs do not have standing to bring their claims, and the case must be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court overrules Plaintiffs' Objections and finds itself in substantial agreement with Judge Hammer's well-reasoned Report and Recommendation. The Court thus adopts the Report and Recommendation in full. The Amended Complaint is therefore dismissed *with prejudice*[3] for lack of subject matter jurisdiction. An appropriate Order follows.

Dated: April 8, 2024

Esther Salas, U.S.D.J.

---

[3] Judge Hammer recommended that the dismissal be with prejudice because "Plaintiffs [had] not sought or otherwise proposed that they be afforded leave to further amend their pleading. Further, this matter [had] been pending for nearly six years, and the question of Plaintiffs' standing [was] more than a year old." (R&R at 11 n.4). In addition, Judge Hammer highlighted that "nothing in the submissions by Plaintiffs suggests that it would be possible to cure standing by further amending the Amended Complaint." (*Id.*). Plaintiffs do not contest this finding in their Objections, though they appear to have misconstrued the Report and Recommendation as recommending dismissal without prejudice. (Plaintiffs' Objections at 1 ("The R&R recommends dismissal without prejudice.")). The Court agrees with Judge Hammer that the age of the case and the standing issue—which have given Plaintiffs a great deal of time to amend—along with the apparent futility of amendment (*see* D.E. No. 128, Letter from Plaintiffs' counsel, at 1 n.1 & 2 (stating that Plaintiffs "cannot meet" *TransUnion*'s requirements and that "dismissal for lack of subject matter seems inevitable")), counsels against allowing further amendment. *See Hernandez v. Johnson & Johnson Consumer Inc.*, No. 19-15679, 2023 WL 2634496, at *5 (D.N.J. Mar. 24, 2023); *Shoulars v. Halstead Fin. Servs., LLC*, No. 21-16560, 2022 WL 4217763, at *9 (D.N.J. Sept. 12, 2022).